Not for Publication

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

LOYAL-T SYSTEMS LLC,

                Plaintiff,

      v.

AMERICAN EXPRESS COMPANY and
AMERICAN EXPRESS TRAVEL
RELATED SERVICES COMPANY, INC.,

                Defendants.

Civil Action No. 23-2625 (ES) (LDW)

OPINION

SALAS, DISTRICT JUDGE

Plaintiff Loyal-T Systems ("Plaintiff" or "Loyal-T") filed this action for patent infringement against Defendants American Express Company ("Amex Co.") and American Express Travel Related Services Company, Inc. ("Amex TRS") (collectively, "Defendants"). (D.E. No. 1 ("Complaint" or "Compl.")). Before the Court is Defendants' motion to dismiss for improper venue pursuant to Federal Rule of Civil Procedure 12(b)(3), or, in the alternative, to transfer this case to the United States District Court for the Southern District of New York pursuant to 28 U.S.C. § 1406(a). (D.E. No. 40 ("Motion")). Having considered the parties' submissions, the Court decides this matter without oral argument. *See* Fed. R. Civ. P. 78(b); L. Civ. R. 78.1(b). For the following reasons, Defendants' Motion is **GRANTED** and this matter shall be transferred to the United States District Court for the Southern District of New York.

## I.     BACKGROUND

### A.     Factual Background

This is a patent infringement action brought by Plaintiff against Defendants concerning patents that are directed to systems and methods for administering customer loyalty programs.

(*See* Compl.).  According to the Complaint, "[a] customer loyalty program is a system whereby a business offers rewards to its customers who make frequent purchases" and "is a mechanism to promote repeat purchases and customer retention." (*Id.* ¶ 17).  "A single merchant loyalty program allows customers to earn rewards through purchasing and redeeming points with the particular merchant or service provider hosting the program." (*Id.* ¶ 18).  By contrast, "[c]oalition loyalty programs are created by a single company and are then extended to a number of participating companies." (*Id.* ¶ 20).  "The owner of the program is responsible for managing the program and overseeing the loyalty point clearing and settlement process." (*Id.*).  Plaintiff alleges that "[t]he main appeal of the coalition loyalty programs is that members can visit any store, earn points for their purchases, and immediately go to another store and redeem their points." (*Id.*).  However, because loyalty programs required specialized hardware to process the loyalty point clearing and settlement process, loyalty programs were historically limited to single merchant loyalty programs. (*Id.* ¶ 21).  According to the Complaint, "[i]n or about 2008, Loyal-T developed a method and process to reduce technology and cost barriers preventing many merchants from establishing, participating in, and managing a coalition loyalty program." (*Id.* ¶ 22).  As alleged in the Complaint, Plaintiff holds the rights to multiple patents that involve methods that allow merchants to offer loyalty programs in a more cost-effective manner. (*Id.* ¶¶ 31–32).  More specifically, Plaintiff alleges that it is the owner of all right, title, and interest in (i) United States Patent No. 8,712,839 (the "'839 Patent") entitled "System and Method for Managing a Loyalty Program Via an Association Network Infrastructure"; and (ii) United States Patent No. 10,210,537 (the "'537 Patent") entitled "System and Method for Managing a Loyalty Program via an Association Network Infrastructure." (*Id.* ¶¶ 23 & 27).  According to Plaintiff, the primary purpose of the '839 Patent and the '537 Patent is to provide methods that allow merchants to utilize an association

network to identify a customer within a loyalty program, facilitate the customer's ability to earn points on a purchase, and redeem points and other rewards without involving additional hardware. (*Id.* ¶¶ 23, 27 & 31).  Despite these patents, Plaintiff alleges that "[s]ince at least 2015, through multiple customer loyalty programs, Defendants have unlawfully benefitted from the unauthorized practice of methods and technology contained in Loyal-T's patents."  (*Id.* ¶ 2).

According to the Complaint, Plaintiff "is a Delaware limited liability company organized with its principal place of business at 5740 Baja Mar, La Jolla, California."  (*Id.* ¶ 3).  Plaintiff alleges that Defendant Amex Co. is a New York corporation with a principal place of business at 200 Vesey Street, New York, New York 10285.  (*Id.* ¶ 5).  Likewise, Plaintiff alleges that Amex TRS is a New York corporation with a principal place of business at 200 Vesey Street, New York, New York 10285 and is a privately held subsidiary of Amex Co.  (*Id.* ¶ 6).  According to Plaintiff, although Defendants are New York corporations, they also do business in New Jersey and have physical locations in New Jersey.  (*Id.* ¶ 12).  More specifically, Plaintiff alleges that based upon publicly available information, Defendants "recently executed a 15-year lease for an 18,000-square-foot lounge in Terminal A at Newark Liberty International Airport" and are constructing their largest Centurion Lounge to date at that location.  (*Id.* ¶ 9).  Further, Plaintiff alleges that based upon publicly available information, American Express Global Business Travel, which is an agent of Defendants, has a location at 101 Hudson Street, 34th Floor, Jersey City, New Jersey 07302.  (*Id.* ¶ 11).

### B.    Procedural History

Plaintiff filed this action for patent infringement against Defendants on May 15, 2023.  (*See* Compl.).  Thereafter, on August 21, 2023, Defendants moved to dismiss Plaintiff's Complaint for improper venue.  (*See* D.E. No. 18-1 ("Mov. Br.")).  Alternatively, Defendants request that this

matter be transferred to the United States District Court for the Southern District of New York. (*See id.*).   As an initial matter, in their moving brief, Defendants contended that venue was improper in the United States District Court for the District of New Jersey because they do not reside in New Jersey—that is, they are not incorporated in New Jersey.  (Mov. Br. at 8).   Rather they pointed out that they are New York corporations that both maintain a principal place of business at 200 Vesey Street, New York, New York 10285.  (*Id.*).   Further, Defendants contended that venue was improper in the United States District Court for the District of New Jersey because they do not maintain a regular and established place of business in New Jersey.  (*Id.* at 8–13). Though Plaintiff alleges that Defendants "recently executed a 15-year lease for an 18,000-square foot lounge in Terminal A at Newark Liberty International Airport," and further alleges that Defendants are constructing "the New Jersey Centurion Lounge" therein, Defendants maintain that, as of the date they filed their moving brief, they had not even executed a lease for a lounge— or for that matter any other facility—at Newark Liberty International Airport.  (*Id.* at 3 (citing Compl. ¶¶ 9–10)).   Further, though Plaintiff also identifies a business it calls "American Express Global Business Travel" that purportedly has an office at 101 Hudson Street, 34th Floor, Jersey City, New Jersey 07302, Defendants pointed out that this entity is not an American Express company but is a separate company that has a limited license to use certain American Express trademarks.  (*Id.* at 4).   Accordingly, Defendants contended that venue is improper in the United States District Court for the District of New Jersey because they do not reside in New Jersey and do not maintain a regular and established place of business in New Jersey. (*Id.* at 8–13).

On September 5, 2023, Plaintiff submitted an opposition.  (D.E. No. 23 ("Opp. Br.") at 2). Though Plaintiff explained that it brought this action in good faith and believed that discovery would establish that Defendants have a presence at Newark Liberty International Airport, it

provided "solely for the purpose of expediting the resolution of this case, [it] will not oppose transfer to the Southern District of New York." (*Id.* at 2). Thereafter, on September 6, 2023, Defendants requested that the Court grant the joint request to transfer the case to the Southern District of New York. (D.E. No. 24 ("Reply") at 2). Before the Court could grant the joint request to transfer the case to the Southern District of New York, on September 27, 2023, Plaintiff filed a Sur-Reply. (D.E. No. 27 ("Pl. Sur-Reply")). In the Sur-Reply, Plaintiff withdrew its consent to transfer the case to the Southern District of New York because on September 12, 2023, news reports announced that Defendants signed a lease for space at Newark Liberty International Airport. (*Id.* at 2–4). Based on this lease, Plaintiff maintains that venue is proper in the United States District Court for the District of New Jersey. (*Id.*). On October 3, 2023, Defendants filed a response to Plaintiff's Sur-Reply. (D.E. No. 33 ("Def. Sur-Reply")). In that response, Defendants maintain that even though they may have signed a lease for space at Newark Liberty International Airport, venue is still improper in the United States District Court for the District of New Jersey because venue is determined by the circumstances as they exist at the time the complaint is filed. (*Id.* at 1–3).[1] As such, they contend that a lease signed on September 12, 2023—months after the May 15, 2023 Complaint was filed and after briefing on Defendants' motion to dismiss for improper venue was complete—is immaterial and does not change the facts that support Defendants' motion. (*Id.*).[2]

---

[1]    On November 29, 2023, this case was reassigned from the Honorable Kevin McNulty, U.S.D.J. to the Undersigned. (D.E. No. 37). After the case was reassigned to the Undersigned, the Undersigned directed the Defendants to file a new notice of motion to support their motion to dismiss for improper venue pursuant to Federal Rule of Civil Procedure 12(b)(3), or, in the alternative, to transfer this case to the United States District Court for the Southern District of New York. (D.E. Nos. 38 & 39). The Defendants filed the renewed notice of motion on February 5, 2024. (*See* Motion).

[2]    On July 8, 2024, Defendants submitted a notice of supplemental authority, which the Court has considered. (*See* D.E. No. 43).

## II.  LEGAL STANDARD

Pursuant to Federal Rule of Civil Procedure 12(b)(3), a district court may dismiss an action for improper venue.  Fed. R. Civ. P. 12(b)(3).  Section 1400(b) of title 28 of the United States Code "constitute[s] the exclusive provision controlling venue in patent infringement proceedings."  *TC Heartland LLC v. Kraft Foods Grp. Brands LLC*, 581 U.S. 258, 265 (2017) (internal quotation marks omitted). "Whether venue is proper under § 1400(b) is an issue unique to patent law and is governed by Federal Circuit law," rather than regional circuit law.  *In re ZTE (USA) Inc.*, 890 F.3d 1008, 1012 (Fed. Cir. 2018).  Under Section 1400(b), venue is proper either (i) where the defendant "resides," or (ii) where it "has committed acts of infringement and has a regular and established place of business."  28 U.S.C. § 1400(b).  Under the first prong, the Supreme Court has held: "As applied to domestic corporations, 'reside[nce]' in § 1400(b) refers only to the State of incorporation."  *TC Heartland*, 581 U.S. at 270.  Under the second prong, the Federal Circuit interpreted a "regular and established place of business" to impose three general requirements: "(1) there must be a physical place in the district; (2) it must be a regular and established place of business; and (3) it must be the place of the defendant."  *In re Cray Inc.*, 871 F.3d 1355, 1360 (Fed. Cir. 2017).  The Supreme Court has cautioned against a broad reading of the patent venue statute.  *Schnell v. Peter Eckrich & Sons, Inc.*, 365 U.S. 260, 264 (1961) ("The requirement of venue is specific and unambiguous; it is not one of those vague principles which, in the interest of some overriding policy, is to be given a liberal construction." (quoting *Olberding v. Ill. Cent. R. Co.*, 346 U.S. 338, 340 (1953)).  As such, the failure to satisfy any statutory requirement requires a finding of improper venue.  *In re Cray Inc.*, 871 F.3d at 1360.

"[U]pon motion by the Defendant challenging venue in a patent case, the Plaintiff bears the burden of establishing proper venue."  *In re ZTE (USA) Inc.*, 890 F.3d at 1013; *Bristol-Myers*

6

*Squibb Co. v. Aurobindo Pharma USA Inc.*, No. 17-0374, No. 17-0379, 2018 WL 5109836, at *1 (D. Del. Oct. 18, 2018). "[W]hen confronted with a motion to dismiss for improper venue, the Court may consider both the complaint and evidence outside the complaint." *Bristol-Myers Squibb Co.*, 2018 WL 5109836, at *2 (citing 14D Wright & Miller, Federal Practice & Procedure § 3826 (4th ed. 2017)). "The Court will accept any venue-related allegations in the complaint as true, unless those allegations are contradicted by the defendant's affidavits[,]" and the Court may also consider any affidavits submitted by the plaintiff. *Id.*

## III.    DISCUSSION

### A.    Venue

As already discussed, 28 U.S.C. § 1400(b) provides that "[a]ny civil action for patent infringement may be brought [i] in the judicial district where the defendant resides, or [ii] where the defendant has committed acts of infringement and has a regular and established place of business." 28 U.S.C. § 1400(b). Because both Amex Co. and Amex TRS are "New York corporation[s]" (Compl. ¶¶ 5–6), neither Amex Co. nor Amex TRS "reside[]" in New Jersey for purposes of patent venue. *TC Heartland*, 581 U.S. at 262 ("[A] domestic corporation 'resides' only in its State of incorporation for purposes of the patent venue statute."). Thus, to establish venue in this case, Plaintiff must show that the Defendants committed acts of infringement and maintain a regular and established place of business in the District of New Jersey.[3]

As set forth above, the Federal Circuit has interpreted a "regular and established place of business" to impose three general requirements: "(1) there must be a physical place in the district; (2) it must be a regular and established place of business; and (3) it must be the place of the

---

[3]    Here, Defendants do not dispute that they have committed acts of infringement within the District of New Jersey. (*See generally* Mov. Br., Reply & Def. Sur-Reply). As such, the Court will focus only on whether Plaintiff has met its burden in showing that Defendants maintain a regular and established place of business in the District of New Jersey.

defendant." *In re Cray Inc.*, 871 F.3d at 1360. First, there must "be a physical, geographical location in the district from which the business of the defendant is carried out." *In re Cray*, 871 F.3d at 1362. This may be "satisfied by a branch office, sales showroom, or warehouse, a table at a flea market, shelf in a supermarket, or even a physical data server." *Uni-Systems, LLC v. U.S. Tennis Assoc. Nat'l Tennis Ctr. Inc.*, No. 17-147, 2020 WL 1694490, at *8 (E.D.N.Y. Apr. 7, 2020) (citing cases). Second, the defendant's place of business must be "regular and established." *In re Cray Inc.*, 871 F.3d at 1360. To be "regular and established," the place of business must operate "in a steady, uniform, orderly, and methodical manner." *Id.* at 1362 (internal quotation marks and alterations omitted). The location must be characterized by a sufficient degree of permanence, and while a business can move locations, it must be stable for a meaningful period of time. *Id.* at 1363. A "regular and established place of business" also "requires the regular, physical presence of an employee or other agent of the defendant conducting the defendant's business at the alleged 'place of business.'" *In re Google LLC*, 949 F.3d 1338, 1345 (Fed. Cir. 2020). Third, the place of business must "be a place of the *defendant*," meaning "the defendant must establish or ratify the place of business." *Cray*, 871 F.3d at 1362 (emphasis added). The Federal Circuit has identified a number of relevant considerations that may assist courts in determining whether a place of business is the place of the defendant, including whether the defendant: (a) owns or leases the place or exercises other attributes of possession or control over the place; (b) has conditioned employment on an employee's continued residence in the district or the storing of materials at a place in the district so that they can be distributed or sold from that place; (c) markets or advertises to the extent it indicates that the defendant itself holds out a place for its business in the district; (d) represents that it has a place of business in the district; and (e) conducts similar activity at the place compared to the defendant's other places of business. *Id.* at 1363–64. In considering the

8

defendant's outward representations, courts may consider "whether the defendant lists the alleged place of business on a website, or in a telephone or other directory; or places its name on a sign associated with or on the building itself." *Id*. That said, "the mere fact that a defendant has advertised that it has a place of business or has even set up an office is not sufficient [to qualify as a regular and established place of business]; the defendant must actually engage in business from that location." *Id*. at 1364.

To support its assertion that venue is proper in the District of New Jersey, Plaintiff alleges the following facts. *First*, Plaintiff alleges that venue is proper in this District because, based upon publicly available information, Defendants "recently executed a 15-year lease for an 18,000-square-foot lounge in Terminal A at Newark Liberty International Airport" and are constructing their largest Centurion Lounge to date at that location. (Compl. ¶ 9). *Second*, Plaintiff alleges that venue is proper in this District because, based upon publicly available information, American Express Global Business Travel, which is an agent of Defendants, has a location at 101 Hudson Street, 34th Floor, Jersey City, New Jersey 07302. (*Id.* ¶ 11). The Court will consider in turn whether either of these allegations indicates that Defendants maintain a regular and established place of business in the District of New Jersey to support proper venue in this District.[4]

---

[4]    In its Complaint, Plaintiff also provides that venue is proper in the District of New Jersey because, among other things, "Defendants are subject to personal jurisdiction in this District [and] have sued and been sued in this District." (Compl. ¶ 15). However, as Defendants point out (Mov. Br. at 14), such allegations are insufficient to support venue. While personal jurisdiction considerations may be relevant to the general venue statute, 28 U.S.C. § 1391, the Supreme Court has confirmed that Section 1400(b) is the sole and exclusive provision controlling venue in patent cases. *See TC Heartland*, 581 U.S. at 265–66 (holding that Section 1400(b) is "not to be supplemented" by Section 1391); *Alexsam, Inc. v. Simon Prop. Grp. (Texas), L.P.*, No. 19-0331, 2021 WL 8441707, at *2 (E.D. Tex. Sept. 3, 2021) ("Alexsam also alleges that '[v]enue is proper in this district pursuant to 28 U.S.C. § 1391(b) because [Amex] has, upon information and belief, a regular and established place of business in this district, which subjects it to the personal jurisdiction of this Court.' However, the allegation under § 1391(b) should be disregarded since *TC Heartland* held that § 1400(b) is the 'sole and exclusive provision controlling venue in patent infringement actions.'").

###### i.        Lease at Newark Liberty International Airport

As set forth above, Plaintiff first alleges that venue is proper in this District because, based upon publicly available information, Defendants "recently executed a 15-year lease for an 18,000-square-foot lounge in Terminal A at Newark Liberty International Airport" and are constructing their largest Centurion Lounge to date at that location.  (Compl. ¶ 9).  In moving to dismiss for improper venue, Defendants submitted a declaration from Anand Gadgil, the Vice President and General Manager at Amex TRS, confirming that as of August 16, 2023, Defendants had not even executed a lease for a lounge—or for that matter any other facility—at Newark Liberty International Airport.  (D.E. No. 18-2 ("Gadgil Decl.") ¶ 7).  Citing to a Port Authority Press Release, Defendants clarified that while they were in the process of negotiating a lease for space at Newark Liberty International Airport, that space—a Centurion Lounge—is not expected to open for years.  (Mov. Br. at 3–4 (citing Port Authority of NY/NY Press Release, https://www.panynj.gov/port-authority/en/press-room/press-release-archives/2023-press-releases/first-airport-lounge-opens-at-newark-liberty-international-airpo.html ("We are also looking forward to the opening of . . . the American Express Centurion Lounge coming sometime in 2025."))).  Accordingly, Defendants maintained that the lack of an actual physical location at Newark Liberty International Airport was fatal to Plaintiff's venue proposition.  (*Id.* at 9).

In opposition, Plaintiff provided that multiple public statements indicate that Defendants were scheduled to enter into a lease agreement with the Port Authority of New York and New Jersey to operate a Centurion Lounge in Newark Liberty International Airport, with the Lounge scheduled to open in 2023, thereby casting doubt on Defendants' sworn statements.  (Opp. Br. at 2).  Plaintiff cites to the following public statements:

- "The lease will start around January 1, 2022, and will continue for around 15 years.  Payment is expected to start around August 1,

10

2023, or when the lounge opens." (Opp. Br. at 3 (citing Ben Schlappig, *Amex To Open Biggest-Ever Centurion Lounge At Newark Airport (EWR)*, One Mile At A Time (Updated Aug. 26, 2022), https://onemileatatime.com/news/amex-centurion-lounge-newark/));

- "American Express will pay a total of $121.5 million over the term of the lease, and will invest approximately $100 million to construct the terminal expansion. The airport itself won't have to make any capital investments in connection to the lounge." (Opp. Br. at 3 (citing Ben Schlappig, *Amex To Open Biggest-Ever Centurion Lounge At Newark Airport (EWR)*, One Mile At A Time (Updated Aug. 26, 2022), https://onemileatatime.com/news/amex-centurion-lounge-newark/));

- "The issuer just received approval for a 15-year lease in the airport's brand-new Terminal A for an 18,000-square-foot lounge, which would make Newark its largest location to date." (Opp. Br. at 3 (citing Zach Griff, *Confirmed: Amex will open largest Centurion Lounge in Newark Airport*, The Points Guy (Sept. 30, 2021), https://thepointsguy.com/news/amex-centurion-lounge-coming-to-newark/));

- "Lease Duration: 15-year base term and one five-year option period to extend" (Opp. Br. at 3–4 (citing Port Authority of New York and New Jersey, *Committee On Operations 9/30/2021*, Youtube at 03:35 (Sept. 30, 2021), https://www.youtube.com/watch?v=TDKQyolrc2U));

- "It is anticipated that the lease agreement between the Port Authority and AMEX will be executed later this year." (Opp. Br. at 4 (Port Authority of New York and New Jersey, *Committee On Operations 9/30/2021*, Youtube at 04:20 (Sept. 30, 2021), https://www.youtube.com/watch?v=TDKQyolrc2U)); and

- Stating that under the approved terms, "the lease would commence on or about January 1, 2022 and continue for 15-years after the commencement of rent payments to the Port Authority." (Opp. Br. at 4 (citing Minutes, Port Authority of New York & New Jersey at 65–66 (Sept. 30, 2021), https://www.panynj.gov/corporate/en/board-meeting-info/board minutes-contractauthorizations.html.)).

(Opp. Br. at 3–4). Plaintiff contended that these public statements at minimum entitled it to venue discovery concerning the Lounge's status. (*Id.* at 4). Notwithstanding the above, however, and

solely to facilitate the forward progress of this case, Plaintiff stated that it would not seek to disprove the statements in the sworn declaration submitted to this Court by Defendants indicating that they had yet to execute a lease at Newark Liberty International Airport and thus would not oppose transfer to the Southern District of New York.  (*Id.* at 2 & 4).

As explained above, before the Court could grant the joint request to transfer the case to the Southern District of New York, on September 27, 2023, Plaintiff filed a Sur-Reply. (Pl. Sur-Reply).  In the Sur-Reply, Plaintiff withdrew its consent to transfer the case to the Southern District of New York because on September 12, 2023, news reports announced that Defendants signed a lease for space at Newark Liberty International Airport.  (*Id.*).  In their Sur-Reply, Plaintiff cites to the following public statements from September 12, 2023, evidencing that a lease had been signed:

- "Today, American Express and the Port Authority of New York & New Jersey announced plans to expand the Centurion Lounge Network with its first ever location at Newark Liberty International Airport (EWR)."  (Pl. Sur-Reply at 2–3 (citing *American Express and The Port Authority of New York & New Jersey Announce Plans for New Centurion Lounge at Newark Liberty International Airport*, American Express (Sept. 12, 2023), https://about.americanexpress.com/newsroom/press-releases/news-details/2023/American-Express-and-The-Port-Authority-of-New-York--New-Jersey-Announce-Plans-for-New-Centurion-Lounge-at-Newark-Liberty-International-Airport/default.aspx.));

- "A spokesperson told Travel + Leisure that while a 2021 proposal document had shown an opening date of 2023, Amex just signed a lease for the Newark lounge this month.  Therefore, it isn't expected to be ready for several years."  (Pl. Sur-Reply at 3 (citing Chris Dong, A New Amex Centurion Lounge Is Coming to Newark Airport—What to Know, Travel + Leisure (Sept. 12, 2023), https://www.travelandleisure.com/amexcenturion-lounge-newark-7968421));

- "While an open secret since 2021, when Amex first secured a 15-year lease for a 17,000 square-foot space in Terminal A at Newark Airport, per The Points Guy that year, official confirmation of an

opening never came.  Still reeling from the pandemic and planning the latest addition, an assumed date of August 2023 came and went. But that has changed now, with American Express announcing the newest Centurion Lounge will open in 2026."  (Pl. Sur-Reply at 3 (citing Pranjal Pande, American Express To Open Centurion Lounge At Newark Airport In 2026, Simple Flying (Sept. 12, 2023), https://simpleflying.com/american-express-to-open-centurion-lounge-atnewark-                                    airport-in 2026/#:~:text=Opening%20in%202026,of%20an%20opening%20 never%20came));

- "When the lease was approved in 2021, the Port Authority said that the Amex lounge should open in 2023.  Maybe the Port Authority was overly optimistic because Amex's opening timeline of 2026 is three years after the year originally shared."  (Pl. Sur-Reply at 3 (citing Zach Griff, New details: Amex will open a Centurion Lounge in Newark Airport, The Points Guy (Sept. 12, 2023), https://thepointsguy.com/news/amexcenturion-lounge-coming-to-newark/)).

(Pl. Sur-Reply at 3–4).  Based on the aforementioned statements, Plaintiff withdrew its consent to transfer this case to the Southern District of New York and requested that the Court hold an evidentiary hearing to allow Defendants to explain what appear to be contradicting statements regarding its presence at Newark Liberty International Airport.  (Pl. Sur-Reply at 3).  In Defendants' response to Plaintiff's Sur-Reply, Defendants note that even though Plaintiff seeks an evidentiary hearing to test the veracity of statements made by Defendants to the Court in conjunction with its motion to dismiss for improper venue, there is nothing false or misleading about their statements that no lease had been executed at Newark Liberty International Airport at the time that its Moving Brief and Reply had been submitted on August 21, 2023 and September 6, 2023 respectively.  (Def. Sur-Reply at 1).  Further, Defendants maintain that even though they may have signed a lease for space at Newark Liberty International Airport, venue is still improper in the United States District Court for the District of New Jersey because venue is determined by the circumstances as they exist at the time the complaint is filed.  (*Id.* at 1–2).  As such, they

contend that a lease signed on September 12, 2023—months after the May 15, 2023 Complaint was filed and after briefing on Defendants' motion to dismiss for improper venue was complete— is immaterial and does not change the facts that support Defendants' motion.  (*Id.*).  Accordingly, Defendants request that the Court deny Plaintiff's request for an evidentiary hearing as futile and unnecessary and grant Defendants' motion to dismiss or transfer this action to the United States District Court for the Southern District of New York.  (*Id.* at 3–4).  For the reasons set forth below, the Court finds that Defendants' lease at Newark Liberty International Airport is insufficient to show that Defendants maintain a regular and established place of business in the District of New Jersey, and thus is insufficient to support proper venue in this District.

As an initial matter, though Defendants contend that venue is determined by the circumstances as they exist at the time the complaint is filed (Mov. Br. at 7; Def. Sur-Reply at 1–2), the Federal Circuit has not determined the point in time at which venue is to be analyzed under Section 1400(b), and a circuit split appears to have emerged on the issue.  *See In re Google LLC*, 949 F.3d 1338, 1340 n.1 (Fed. Cir. 2020) (acknowledging, but not resolving, circuit split on timing for determining patent venue).  One line of cases holds that patent venue should be determined based on the facts that exist at the time the action was filed, as doing so best adheres to the language of Section 1400(b).  *See, e.g.*, *NetSoc, LLC v. Chegg Inc.*, No. 18-10262, 2019 WL 4857340, at *2 (S.D.N.Y. Oct. 2, 2019) (holding that patent venue "is to be analyzed based on facts existing at the time th[e] action [i]s commenced"); *Square One Choices Inc. v. Ditec Sols. LLC*, No. 22-7680, 2023 WL 5277869, at *9 (S.D.N.Y. Aug. 16, 2023) (same); *TrackThings LLC v. NETGEAR, Inc.*, No. 21-5440, 2022 WL 2829906, at *5–6 (S.D.N.Y. July 20, 2022) (same); *Galderma Labs., L.P. v. Teva Pharms. USA, Inc.*, 290 F. Supp. 3d 599, 612 (N.D. Tex. 2017) (same); *cf. Flowers Indus., Inc. v. FTC*, 835 F.2d 775, 776 n.1 (11th Cir. 1987) (holding in the context of the general venue

statute that "venue must be determined based on the facts at the time of filing"). Other courts have held that patent venue should be assessed based on the facts that exist at the time the cause of action accrues, so long as a suit is filed within a reasonable time thereafter. *See, e.g.*, *San Shoe Trading Corp. v. Converse Inc.*, 649 F. Supp. 341, 343–45 (S.D.N.Y. 1986) (citing *Welch Sci. Co. v. Hum. Eng'g Inst., Inc.*, 416 F.2d 32 (7th Cir. 1969)). Nevertheless, here, it is not necessary to resolve this conflict because—as will be discussed below—Plaintiff has failed to meet its burden of establishing proper venue based on the facts that existed at the time this action was filed or at any other time.

As already discussed, Plaintiff contends that Defendants maintain a regular and established place of business in the District of New Jersey because on September 12, 2023, news reports announced that Defendants signed a lease to operate their Centurion Lounge at Newark Liberty International Airport. (Pl. Sur-Reply at 2–3). However, even if the Court could consider this lease—signed months after the May 15, 2023 Complaint was filed—in determining whether venue is proper in this case, that lease would still be insufficient in establishing that Defendants maintain a regular and established place of business in the District of New Jersey. This is because Plaintiffs have not demonstrated the second *Cray* factor—that the leased property in Newark Liberty International Airport is "regular and established." *In re Cray Inc.*, 871 F.3d at 1360.

The Federal Circuit's decision in *In re Google LLC*, 949 F.3d 1338, 1340 n.1 (Fed. Cir. 2020) is instructive on this point. In *In re Google*, a plaintiff sued Google for patent infringement in the Eastern District of Texas, alleging that venue was proper based on the presence of several Google Global Cache servers in the District. *In re Google*, 949 F.3d at 1340. Google did not own the datacenters where the servers were hosted but contracted with two internet service providers (ISPs) in the district to host the servers. *Id.* In deciding whether venue was proper in the Eastern

District of Texas, the Federal Circuit clarified that a "'regular and established place of business' requires the regular, physical presence of an employee or other agent of the defendant conducting the defendant's business at the alleged 'place of business.'" *Id.* at 1345. As such, the Federal Circuit determined that venue was improper in the Eastern District of Texas in that case where Google only maintained servers that were operated by third-party providers and did not have any employees or agents located in that District. *Id.* at 1340, 1344–47. Likewise, here, though it appears that Defendants signed a lease to operate their Centurion Lounge at Newark Liberty International Airport, there is no indication that any employee or other agent of the Defendants conducts Defendants' business at that location. In fact, the press releases that Plaintiff relies on in arguing that venue is proper in this case state that the Centurion Lounge at Newark Liberty International Airport is not scheduled to open until 2026. (*See, e.g.*, (Pl. Sur-Reply at 3 (citing Pranjal Pande, *American Express To Open Centurion Lounge At Newark Airport In 2026*, Simple Flying, (Sept. 12, 2023), ("Still reeling from the pandemic and planning the latest addition, an assumed date of August 2023 came and went. ***But that has changed now, with American Express announcing the newest Centurion Lounge will open in 2026***." (emphasis added))); Pl. Sur-Reply at 3 (citing Zach Griff, *New details: Amex will open a Centurion Lounge in Newark Airport*, The Points Guy (Sept. 12, 2023), https://thepointsguy.com/news/amexcenturion-lounge-coming-to-newark/ ("When the lease was approved in 2021, the Port Authority said that the Amex lounge should open in 2023. Maybe the Port Authority was overly optimistic because ***Amex's opening timeline of 2026*** is three years after the year originally shared" (emphasis added)))). And Plaintiff has not pointed to any other facts that indicate that any employee or other agent of the Defendants conducts Defendants' business at the leased property in Newark Liberty International Airport. As such, even construing the facts in Plaintiffs' favor, the mere existence of this leased property—

from which no employee or agent of Defendants appears to be working—is insufficient to establish venue in the District. *In re Google LLC*, 949 F.3d at 1345 (stating that venue requires "the regular, physical presence of an employee or other agent of the defendant conducting the defendant's business at the alleged 'place of business'"); *Bausch Health Ireland Ltd. v. Mylan Lab'ys Ltd.,* No. 21-10403, 2022 WL 683084, at *6 (D.N.J. Mar. 8, 2022) ("Even construing the facts in [p]laintiffs' favor, the mere existence of this property, from which no Mylan Inc. employee has worked from, is insufficient to establish venue in the District."); *ICharts LLC v. Tableau Software, LLC*, No. 23-1225, 2024 WL 2305214, at *6 (W.D. Tex. May 21, 2024) ("Tableau may have historically used this property to conduct business, but Tableau has not presented evidence suggesting that it is still used as a regular place of business. Thus, while the 260 California Avenue property *is a physical property that Tableau continues to lease*, Tableau cannot use that location to establish that it has a regular and established place of business in NDCA." (emphasis added)). Because Plaintiff has not shown the "regular, physical presence of an employee or other agent" of Defendants at Newark Liberty International Airport, it has failed to meet its burden of demonstrating the second *Cray* factor—that Defendant has a "regular and established place of business" at that location. *In re Google LLC*, 949 F.3d at 1345. And because all three *Cray* factors must be met for venue to be proper, Defendants' purported presence at Newark Liberty International Airport is insufficient to support proper venue in this District. *See Andra Grp., LP v. Victoria's Secret Stores, L.L.C.*, 6 F.4th 1283, 1290 (Fed. Cir. 2021).[5]

---

[5]    To be sure, in its Opposition Brief, Plaintiff cited to multiple public statements that indicated that in 2021 Port Authority was authorized to enter into a lease with Defendants to operate a Centurion Lounge in Newark Liberty International Airport with the lease set to start in 2022 and with the Lounge scheduled to open in 2023. (Opp. Br. at 3 (citing Ben Schlappig, *Amex To Open Biggest-Ever Centurion Lounge At Newark Airport (EWR)*, One Mile At A Time (Updated Aug. 26, 2022), https://onemileatatime.com/news/amex-centurion-lounge-newark/ ("The lease will start around January 1, 2022, and will continue for around 15 years. Payment is expected to start around August 1, 2023, or when the lounge opens")); *Id.* at 4 (citing Minutes, Port Authority of New York & New Jersey at 65-66 (Sept. 30, 2021), https://www.panynj.gov/corporate/en/board-meeting-info/board-minutes-contractauthorizations.html. (providing that on September 30, 2021, the Port Authority's Committee on Operations authorized the Port Authority's

### ii.    Operations of American Express Global Business Travel

As set forth above, Plaintiff next alleges that venue is proper in this District because, based upon publicly available information, American Express Global Business Travel, which is an agent of Defendants, has a location at 101 Hudson Street, 34th Floor, Jersey City, New Jersey 07302. (Compl. ¶ 11).   In moving to dismiss Plaintiff's Complaint for improper venue, Defendants contend that the office space of GBT is insufficient to show that Defendants maintain a regular and established place of business in the District of New Jersey because Plaintiff has failed to show that this office space is a "place of the [D]efendant[s]," as is necessary to establish proper venue. *(*Mov. Br. at 10–13).   More specifically, they maintain that GBT's office space cannot be attributable to Defendants for purposes of venue because GBT is an independent, publicly-traded company.  (*Id.* at 10–12).  Defendants explain that GBT was originally the Global Business Travel division within Amex Co.  (*Id.* at 10).  However, they explain that in 2014, Amex Co. divested 50% of that division to a group of investors led by Certares LP.  (*Id.* at 10–11 (citing American Express to Spin Off Business Travel Division Into Joint Venture, https://www.forbes.com/sites/samanthasharf/2014/03/17/american-express-to-spin-off-business-

---

Executive Director to enter into a lease with American Express Travel Related Services Company, Inc. for the Lounge and stating that under the approved terms, "the lease would commence on or about January 1, 2022 and continue for 15-years after the commencement of rent payments to the Port Authority."))).  Further, in its Sur-Reply Plaintiff cited to public statements which indicated that Defendants' lease at Newark Liberty International Airport had been approved and/or secured in 2021.  (Pl. Sur-Reply at 3 (citing Zach Griff, *New details: Amex will open a Centurion Lounge in Newark Airport*, The Points Guy (Sept. 12, 2023), https://thepointsguy.com/news/amexcenturion- lounge-coming-to-newark/. ("When the lease was approved in 2021 . . .")).  However, as of August 2023, Defendants clarified in a sworn declaration that Defendants had not even executed a lease for a lounge—or for that matter any other facility—at Newark Liberty International Airport.  (Gadgil Decl. ¶ 7).  And regardless, the public statements that Plaintiff cites to in its Sur-Reply indicate that Defendants do not plan to open the Centurion Lounge at Newark Liberty International Airport until 2026. *(*Pl. Sur-Reply at 3 (citing Zach Griff, *New details: Amex will open a Centurion Lounge in Newark Airport*, The Points Guy (Sept. 12, 2023), https://thepointsguy.com/news/amexcenturion-lounge-coming-to-newark/ ("When the lease was approved in 2021, the Port Authority said that the Amex lounge should open in 2023.  Maybe the Port Authority was overly optimistic because **Amex's opening timeline of 2026** is three years after the year originally shared" (emphasis added))).  And Plaintiff has not pointed to any other facts that indicate that any employee or other agent of the Defendants conducts Defendants' business at the leased property in Newark Liberty International Airport or that the lounge will be operational at an earlier date.  As such, Plaintiff has failed to meet its burden of showing that Defendants' lease at Newark Liberty International Airport is sufficient to support proper venue in this District.

travel-division/)).  Thereafter, in 2021, GBT announced plans to become a publicly-traded company through a merger with Apollo Strategic Growth Capital.  (*Id.* at 11 (citing AmEx Global Business Travel to go public via $5.3 bln Apollo SPAC deal, https://www.reuters.com/markets/deals/amex-global-business-travel-nears-53-bln-apollo-spac-deal-wsj-2021-12-03/)).  And "[f]ollowing the completion of the merger, the newly formed company began trading on the New York Stock Exchange on May 31, 2022—almost a year before the Complaint was filed—with the symbol GTBG."  (*Id.* (citing American Express Global Business Travel Becomes Publicly Traded Company, https://investors.amexglobalbusinesstravel.com/investors/news/news-details/2022/American-Express-Global-Business-Travel-Becomes-Publicly-Traded-Company/default.aspx)).

Defendants note that Amex Co. presently holds a minority interest in the publicly-traded GBT company.  (*Id.*).  Further, Defendants point out that GBT itself publicly and expressly disclaims any corporate relationship to Defendants as follows:

> Global Business Travel Group, Inc. (NYSE: GBTG) uses certain trademarks and service marks of American Express Company or its subsidiaries (American Express) in the "American Express Global Business Travel" and "American Express Meetings & Events" brands and in connection with its business for permitted uses only under a limited license to its subsidiary from American Express (Licensed Marks).  The Licensed Marks are trademarks or service marks of, and the property of, American Express.  **American Express holds a minority interest in GBTG, which operates as a separate company from American Express.  As such, an investment in GBTG is not an investment in American Express.  American Express shall not be responsible in any manner whatsoever for, and in respect of, the statements herein, all of which are made solely by GBTG.**

(*Id.* at 11–12 (citing Global Business Travel | Investor Relations, https://investors.amexglobalbusinesstravel.com/overview/default.aspx) (emphasis added)).  In addition, though Plaintiff alleges that GBT is an agent of Defendants because it acts in concert

with Defendants and conducts business in the travel industry, Defendants maintain that such conclusory allegations are insufficient to support an agency relationship. (*Id.* at 12). As such, Defendants contend that the office space of GBT cannot be attributable to Defendants for purposes of venue. (*Id.* at 10–13). Plaintiff does not contest any of these facts or arguments. (*See generally* Opp. Br. & Pl. Sur-Reply). For the reasons set forth below, the Court agrees with Defendants and finds that the office space of GBT is insufficient to show that Defendants maintain a regular and established place of business in the District of New Jersey.

To start, Plaintiff has failed to meet its burden of demonstrating the second *Cray* factor— that Defendants conduct "regular and established" business at the office space of GBT. *In re Cray Inc.*, 871 F.3d at 1360. As already discussed, "a 'regular and established place of business' requires the regular, physical presence of an employee or other agent of the defendant conducting the defendant's business at the alleged 'place of business.'" *In re Google*, 949 F.3d at 1345. "An agency relationship is a 'fiduciary relationship that arises when one person (a 'principal') manifests assent to another person (an 'agent') that the agent shall act on the principal's behalf and subject to the principal's control, and the agent manifests assent or otherwise consents to act.'" *Id.* (citing Restatement (Third) of Agency § 1.01 (Am. L. Inst. 2006)). "The essential elements of agency are [i] the principal's 'right to direct or control' the agent's actions, [ii] 'the manifestation of consent by [the principal] to [the agent] that the [agent] shall act on his behalf,' and [iii] the 'consent by the [agent] to act.'" *Id.* (alterations in original) (quoting *Meyer v. Holley*, 537 U.S. 280, 286 (2003). "The party asserting that a relationship of agency exists generally has the burden in litigation of establishing its existence." *In re Volkswagen Grp. of Am., Inc.*, 28 F.4th 1203, 1208 (Fed. Cir. 2022). Here, Plaintiff has failed to set forth any facts indicating that any employee of the Defendants conducts Defendants' business at GBT's office space in Jersey City. (*See generally*

20

Opp. Br. & Pl. Sur-Reply).  Nor has Plaintiff set forth any facts to show that GBT, which operates in Jersey City, is an agent of Defendants that conducts Defendants' business at that location.  (*See generally* Opp. Br. & Pl. Sur-Reply).  Though Plaintiff alleges in a conclusory manner that GBT "is an agent of" Defendants and "acts in concert with" Defendants in the travel industry (Compl. ¶ 11), it fails to set forth any facts indicating the essential elements of agency including (i) whether Defendants have the right to direct or control GBT's actions, (ii) whether Defendants have manifested consent to GBT that GBT act on their behalf, and (iii) whether GBT consented to so act.  *In re Google*, 949 F.3d at 1345.  Without such additional facts, the Court cannot conclude that GBT is an agent of the Defendants conducting the Defendants' business at GBT's office space in Jersey City.  *Id.* at 1345–47; *see also Andra*, 6 F.4th at 1290 ("Because Andra has not demonstrated that LBI, Brand, or Direct has 'the right to direct or control' the actions of Store employees, it has not shown the 'regular, physical presence of an employee or other agent' of LBI, Brand, or Direct in the District."); *Ocugiene, Inc. v. ThermaMEDx, LLC*, No. 22-5607, 2022 WL 18284980, at *2 (C.D. Cal. Dec. 8, 2022) (declining to find venue based on theory of agency where "[p]laintiff has not addressed each of the agency elements, let alone established them.").  Further, though GBT appears to have a limited license to use American Express trademarks (Mov. Br. at 11–12), that fact alone is not sufficient to support an agency relationship.  *See, e.g., In re Volkswagen Grp. of Am., Inc.*, 28 F.4th 1203, 1211–12 (Fed. Cir. 2022) (finding that plaintiffs failed to demonstrate that dealerships were defendants' agents for purposes of venue even though those dealerships displayed the defendants' logos).  As such, Plaintiff has failed to meet its burden of demonstrating the second *Cray* factor—that Defendants conduct "regular and established" business at the office space of GBT.  *In re Cray Inc.*, 871 F.3d at 1360.

Further, Plaintiff has failed to meet its burden of demonstrating the third *Cray* factor—that the office space of GBT is a "place of the [D]efendant[s]." *In re Cray Inc.*, 871 F.3d at 1360.  The Federal Circuit has identified a number of relevant considerations that may assist courts in determining whether a place of business is the place of the defendant, including whether the defendant: (a) owns or leases the place or exercises other attributes of possession or control over the place; (b) has conditioned employment on an employee's continued residence in the district or the storing of materials at a place in the district so that they can be distributed or sold from that place; (c) markets or advertises to the extent it indicates that the defendant itself holds out a place for its business in the district; (d) represents that it has a place of business in the district; and (e) conducts similar activity at the place compared to the defendant's other places of business.  *Id.* at 1363–64.  Venue may also be imputed under an alter-ego or veil-piercing theory.  *See Celgene Corp. v. Mylan Pharms. Inc.*, 17 F.4th 1111, 1125 (Fed. Cir. 2021).  "A threshold inquiry when determining whether the place of business of one company can be imputed to another, related company is whether they have maintained corporate separateness."  *Andra*, 6 F.4th at 1289.  "If corporate separateness has not been maintained, the place of business of one corporation may be imputed to the other for venue purposes."  *Id.*  But "where related companies have maintained corporate separateness, the place of business of one corporation is not imputed to the other for venue purposes."  *Id.*  Corporate separateness is an issue of regional-circuit law.  *See Wechsler v. Macke Int'l Trade, Inc.*, 486 F.3d 1286, 1295 (Fed. Cir. 2007).  The relevant veil-piercing theory in the Third Circuit is called the "alter ego" doctrine, among other names.  *See Pearson v. Component Tech. Corp.*, 247 F.3d 471, 484 & n.2 (3d Cir. 2001).  Under that doctrine, courts will disregard the corporate form to "prevent fraud, illegality, or injustice," "when recognition of the corporate entity would defeat public policy or shield someone from liability for a crime," or "when

the parent so dominated the subsidiary that it had no separate existence." *Id.* at 484. Here, Defendants point out that GBT is an independent, publicly-traded company. (Mov. Br. at 11). Though Defendants acknowledge that Amex Co. presently holds a minority interest in the publicly-traded GBT company, Plaintiff has failed to set forth any facts showing why the Court should disregard the corporate identities of two separate companies such that the office space of GBT in Jersey City could be imputed to Defendants for venue purposes. (*Id.*). Further, though GBT appears to have a limited license to use American Express trademarks (*id.*), "courts have refused to pierce the veil even when subsidiary corporations use the trade name of the parent." *Pearson*, 247 F.3d at 485. There are no other facts to indicate that the GBT office space in Jersey City is the place of the Defendants. More specifically, Plaintiff has not indicated that the GBT office space is rented, leased or owned by Defendants, nor do they set forth facts showing that Defendants ever marketed or held GBT out to the public as Defendants or ratified the GBT office space in Jersey City as their own place of business. As such, Plaintiff has failed to meet its burden of demonstrating the third *Cray* factor—that that the office space of GBT is a "place of the [D]efendant[s]." *In re Cray Inc.*, 871 F.3d at 1360. Because all three *Cray* factors must be met for venue to be proper against a defendant, the GBT office in Jersey City is insufficient to support proper venue in this District.

In sum, Plaintiff has failed to meet its burden of establishing proper venue in this District based on the facts that existed at the time this action was filed, or at any other time.

### B.    Venue Discovery

To the extent that Plaintiff argues that it is entitled to venue discovery before the Court decides Defendants' Motion, the Court disagrees.[6] (Opp. Br. at 2; Pl. Sur-Reply at 1–4). The

---

[6]    The Federal Circuit does not appear to have addressed whether Federal Circuit law or regional circuit law applies when considering a request for venue discovery for purposes of § 1400(b). Nevertheless, courts in this circuit

Supreme Court has stated that "where issues arise as to jurisdiction or venue, discovery is available to ascertain the facts bearing on such issues." *Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340, 351 n. 13 (1978). In general, courts permit venue discovery "unless the plaintiff's claim is 'clearly frivolous.'" *Toys "R" Us, Inc. v. Step Two, S.A.*, 318 F.3d 446, 456 (3d Cir. 2003) (quoting *Massachusetts Sch. of Law at Andover, Inc. v. Am. Bar Ass'n*, 107 F.3d 1026, 1042 (3d Cir. 1997)); *see also Galderma Laboratiores, L.P. v. Medinter US, LLC*, No. 18-1892, 2019 WL 13114421, at *3 (D. Del. Oct. 25, 2019). Nonetheless, to show that discovery is warranted, a party must, at a minimum, state a non-frivolous basis for venue and do so with "reasonable particularity." *Id.*; *see also Step Two, S.A.*, 318 F.3d at 456 (quoting *Mellon Bank (E.) PSFS, Nat. Ass'n v. Farino*, 960 F.2d 1217, 1223 (3d Cir. 1992)). That is, a court should not just permit venue discovery as a matter of course; before allowing the discovery to proceed, the court must be satisfied that there is some indication that venue in the forum is appropriate as to the defendant. *Galderma Laboratiores, L.P.*, 2019 WL 13114421, at *3. A plaintiff may not "undertake a fishing expedition based only upon bare allegations, under the guise of [venue] discovery." *Id.* (internal quotation marks and citations omitted); *see also Lincoln Ben. Life Co. v. AEI Life, LLC*, 800 F.3d 99, 108 n.38 (3d Cir. 2015) ("[J]urisdictional discovery is not available merely because the plaintiff requests it.").

Here, the Court finds that Plaintiff has not presented facts sufficient to show that venue discovery is warranted. Though Plaintiff emphasizes that Defendants have a presence at Newark Liberty International Airport based on the lease Defendants signed at that location (Pl. Sur-Reply at 1–4), they have failed to set forth any facts indicating that any employee or other agent of the Defendants conducts Defendants' business at that location. In fact, as set forth above, the press

---

have applied regional circuit law to such requests. *See Novartis Pharms. Corp. v. Handa Neuroscience, LLC*, No. 21-645, 2022 WL 610771, at *8 (D. Del. Mar. 1, 2022) (applying the Third Circuit's jurisdictional-discovery standard to venue discovery); *Bausch Health Ireland Ltd.*, 2022 WL 683084, at *9. As such, the Court will do the same.

releases that Plaintiff relies on in arguing that venue is proper in this case state that the Centurion Lounge at Newark Liberty International Airport is not scheduled to open for years. (*See, e.g.*, Pl. Sur-Reply at 3 (citing Pranjal Pande, *American Express To Open Centurion Lounge At Newark Airport In 2026*, Simple Flying, (Sept. 12, 2023), ("Still reeling from the pandemic and planning the latest addition, an assumed date of August 2023 came and went. ***But that has changed now, with American Express announcing the newest Centurion Lounge will open in 2026***." (emphasis added))); Pl. Sur-Reply at 3 (citing Zach Griff, *New details: Amex will open a Centurion Lounge in Newark Airport*, The Points Guy (Sept. 12, 2023), https://thepointsguy.com/news/amexcenturion-lounge-coming-to-newark/ ("When the lease was approved in 2021, the Port Authority said that the Amex lounge should open in 2023. Maybe the Port Authority was overly optimistic because ***Amex's opening timeline of 2026*** is three years after the year originally shared" (emphasis added)))). As such, to the extent that Plaintiff argues that it is entitled to venue discovery, its request is futile and unsupported by specific allegations or submitted evidence. *See Galderma Laboratiores, L.P.*, 2019 WL 13114421, at *6–7 (denying discovery where "[p]laintiffs have failed to point to any record evidence relating to most of the factors that the Third Circuit has used to address corporate separateness" and "what little evidence [p]laintiffs have put forward does not speak impactfully to the prospect that Anteco's corporate separateness from Attwill is a 'legal fiction'" and thereby would support venue); *Symbology Innovations, LLC v. Lego Sys., Inc.*, 282 F. Supp. 3d 916, 934 (E.D. Va. 2017) (denying a request for venue-related discovery because "[plaintiff] fails to identify any source of information or fact that would change the [c]ourt's analysis of whether [defendant] has a regular and established place of business in this District.").[7]

---

[7]    Further, to the extent that Plaintiff requests an evidentiary hearing in this case, any such request is denied. In Plaintiff's Sur-Reply, it requests that the Court hold an evidentiary hearing to allow Defendants an opportunity to

### C.    Transfer

Because venue is not proper in the District of New Jersey, the Court must either dismiss the case, or "if it be in the interest of justice, transfer [it] to any district or division in which it could have been brought."  28 U.S.C. § 1406(a).  "The decision whether a transfer or dismissal is in the interest of justice rests within the sound discretion of the district court."  *Pers. Audio, LLC v. Google, Inc.*, 280 F. Supp. 3d 922, 936 (E.D. Tex. 2017) (internal quotations omitted).  However, "[d]ismissal is considered to be a harsh remedy . . . and transfer of venue to another district in which the action could originally have been brought, is the preferred remedy."  *Best Med. Int'l, Inc. v. Elekta AB*, No. 18-1600, 2019 WL 3304686, at *2 (D. Del. July 23, 2019) (internal quotation marks and citation omitted).

Here, the interests of justice favor transfer to the United States District Court for the Southern District of New York in lieu of dismissal.  As alleged in the Complaint, Defendants are "New York corporation[s]," with their "principal place[s] of business located at 200 Vesey Street, New York, New York 10285."  (Compl. ¶¶ 5–6).  Accordingly, Defendants urge the Court to transfer this case to the Southern District of New York where they both reside for purposes of 28 U.S.C. § 1400(b).  (Mov. Br. at 14–16).  And in fact, Plaintiff had previously agreed that this case could be transferred to the Southern District of New York and thereby indicated that that this case could have been brought in that District.  (*See generally* Opp. Br.).  As such, venue is proper in the United States District Court for the Southern District of New York and in the interest of justice,

---

explain what appear to be misstatements to the Court regarding its presence at Newark Liberty International Airport. (Pl. Sur-Reply at 3–4).  The Court declines to entertain this request.  As Defendants explain, at the time Defendants submitted their motion to dismiss for improper venue on August 21, 2023 and their reply in support of the motion on September 6, 2023, Defendants had not yet executed a lease at Newark Liberty International Airport and Plaintiff does not state otherwise.  (Def. Sur-Reply at 1).  And there is nothing in the press releases that Plaintiff relies on to indicate that the lease had been in place at those times.  (Pl. Sur-Reply at 2–3).  As such, there is nothing to indicate that Defendants' statements—that Defendants had not yet executed a lease at Newark Liberty International Airport as of August 21, 2023 and September 6, 2023—were false or misleading.  As such, Plaintiff's request for an evidentiary hearing to test the veracity of Defendants' statements is unnecessary and therefore denied.

the Court exercises its discretion under 28 U.S.C. § 1406(a) to transfer this case to the Southern District of New York.  *See TC Heartland*, 581 U.S. at 262 ("[A] domestic corporation 'resides' only in its State of incorporation for purposes of the patent venue statute."); *ES Distribution, LLC v. Hangtime LLC*, No. 20-4069, 2020 WL 6689755, at *3 (D.N.J. Nov. 13, 2020) ("Here, the interests of justice favor transfer to the United States District Court for the District of New Mexico in lieu of dismissal.  As the Court determined above, the District of New Mexico is an appropriate venue for this matter as it is where Defendant is incorporated.  Accordingly, this matter will be transferred to the District of New Mexico."); *see also Alexsam, Inc. v. Simon Prop. Grp. (Texas), L.P.*, No. 19-0331, 2021 WL 8441707, at *3 (E.D. Tex. Sept. 3, 2021) (transferring case against Amex to Southern District of New York).[8]

## IV.    CONCLUSION

Based on the foregoing, Defendants' motion to dismiss, or alternatively, its motion to transfer (D.E. No. 40), is hereby **GRANTED**.  This matter will be transferred to the United States District Court for the Southern District of New York.  An appropriate Order follows.

Dated: October 2, 2024                                         *s/ Esther Salas*
                                                              **Esther Salas, U.S.D.J.**

---

[8]    In Opposition, Plaintiff noted that it is anticipated that upon transfer to the Southern District of New York, Defendants will improperly seek to file a second motion to dismiss pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. (Opp. Br. at 5).  Plaintiff contends that Defendants have waived their opportunity to file a Rule 12(b)(6) motion and this Court should so find. (*Id.* at 6).  However, as Defendants point out (Reply at 1–2), any ruling on whether Defendants can file a Rule 12(b)(6) motion after transfer would be premature because Defendants have not yet filed such a Rule 12(b)(6) motion.  Any such request can be properly entertained if and when Defendants choose to file any such motion.